United States District Court
Southern District of Texas
**ENTERED**
September 15, 2021
Nathan Ochsner, Clerk

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  TEXAS
VICTORIA  DIVISION

LARRY  DEAN  LUNA,                              §
                                                §
          Plaintiff,                            §
VS.                                             §      CIVIL  ACTION  NO.  6:21-CV-17
                                                §
VICTORIA  COUNTY  JAIL, *et al*,                §
                                                §
          Defendants.                           §

## MEMORANDUM  AND  RECOMMENDATION
## TO RETAIN  CASE  AND  DISMISS  CERTAIN  CLAIMS

Plaintiff Larry Dean Luna, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

Plaintiff has stated for purposes of screening: (1) deliberate indifference claims based on inadequate treatment for his penis condition against **Medical Provider Veronica, Registered Nurse (RN) Rhonda Williams, Nurse Katrina, Nurse Delone, Nurse Gayle, Nurse Madison, Dr. Robertson, and Nurse Black** in their individual capacities; (2) deliberate indifference claims based on inadequate treatment for his dental condition against **RN Williams, Nurse Gayle, and Nurse Madison** in their individual capacities; and (3) deliberate indifference claims against **Victoria County** (as substitute Defendant for the individual defendants from the Victoria County Jail in their official

capacities) based on an alleged policy to deny inmates access to specialized medical providers.  It is respectfully recommended that these claims be **RETAINED.**  The undersigned will order service on these defendants.

For the reasons set forth below, the undersigned further recommends that: (1) Plaintiff's claims for injunctive relief against all **Defendants** be dismissed with prejudice; and (2)  Plaintiff's claims against all individual **Defendants** from the Victoria County Jail in their official capacities be **DISMISSED with prejudice**; and (3) Plaintiff's remaining claims against all remaining Defendants be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL  BACKGROUND

Plaintiff is currently a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the Cotulla Unit in Cotulla, Texas.  Plaintiff's allegations in this case arise in connection with his confinement at the Victoria County Jail in Victoria, Texas, as both a pretrial detainee and convicted inmate.

Plaintiff sues the following defendants in his Amended Complaint: (1) the Victoria County Jail; (2) the Victoria County Sheriff's Department; (3) the Victoria County Jail Medical Department; (4) Justin Marr, Victoria County Sheriff; (5) John McNiel, ER

doctor at Citizens Memorial Hospital; (6) Citizens Memorial[1] Hospital ER Employees; (7) Veronica, the Medical Provider at the Victoria County Jail; (8) Capt. Charles Williamson, Victoria County Jail; (9) Eddie Flores, Victoria County Sheriff's Officer; (10)  RN Rhonda Williams, Victoria County Jail Medical Department; (11) Mona, Victoria County Jail Kitchen Staff; (12) Nurse Katrina, Victoria County Jail Medical Department; (13) Nurse Delone, Victoria County Jail Medical Department; (14) Nurse Gayle, Victoria County Jail Medical Department; (15) Will Franklin, Chief Deputy at the Victoria County Jail; (16) Mrs. Merez,[2] Victoria County Jail Medical Department; (17) Nurse Madison, Victoria County Jail Medical Department; (18) Dr. Robertson; Victoria County Jail Medical Department; and (19) Nurse Ashley Black, Victoria County Jail Medical Department.  (D.E. 14, pp. 4-8).

Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs in two different respects.  First, Plaintiff alleges that certain defendants caused him to have permanent damage to his penis, whereby he lost all "penis function" including the inability to have an erection.  Second, Plaintiff alleges that metal contained in his food caused him to lose a tooth and damaged his gums.  Plaintiff generally complains he was denied proper treatment by Defendants' refusal to allow Plaintiff to be seen by various medical professionals including a urologist and a qualified dentist.  (D.E.

---

[1] Plaintiff sues individuals from the Citizens Memorial Hospital in this action.  Throughout his *Spears* testimony, he references being treated at the Citizens Medical Center in Victoria.   The correct name of the facility is Citizens Medical Center.
[2] Plaintiff clarified  that this defendant's name was "Mrs. Merez" and not "Mrs. Melez."

14, p. 4-9).  In his Amended Complaint, Plaintiff indicates that he seeks only monetary relief. (D.E. 14, p. 9).

## III.   PLAINTIFF'S   ALLEGATIONS   AND   CLAIMS   AGAINST   EACH DEFENDANT

### A.   Background Information

On June 30, 2020, the undersigned conducted a *Spears*[3] hearing.  The following representations were made either in Plaintiff's Amended Complaint (D.E. 14) or at the *Spears* hearing.  At the time of the *Spears* hearing, Plaintiff was 49 years old.

Plaintiff was confined at the Victoria County Jail beginning either in January or February 2020.   (D.E. 33, p. 7).   He was subsequently released on a Personal Recognizance bond (PR bond) sometime around August 1, 2020.  Plaintiff was arrested two months later after violating the conditions of his pre-trial release.  Plaintiff's bond was revoked in November 2020 because he failed to appear for a Victoria criminal court setting; Plaintiff alleges he missed court due to being in a hospital emergency room. Plaintiff was in custody at the Victoria County Jail from November 12, 2020 until the date of his *Spears* hearing.  (D.E. 33, p. 10).  He was convicted in Victoria County on felony drug charges and sentenced on June 3, 2021 to eight years in prison.

### B.   Allegations regarding Plaintiff's Penis Condition

In 2006, Plaintiff was diagnosed with myeloid leukemia cancer, which is a rare blood cell cancer .  (D.E. 33, p. 27).   This cancer causes Plaintiff's red blood cells to clog.  When it is not under control, Plaintiff suffers from priapism (long-term) erections

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

caused by blood clots in his penis.    Plaintiff's priapism erections usually begin while he is asleep.

Plaintiff testified that having an erection for over four hours without intervention from a urologist may result in permanent damage to the penis.  He further explained that: "[O]nce I have permanent penis damage, the erection would never stop, they will continue and continue and I will have to go through three procedures." (D.E. 33, p. 30). Plaintiff testified that, under the first procedure, the urologist administers an epidermal shot either in the arm or the penis.  Plaintiff described the second procedure as being a pressure release where blood is drained from the penis.  The blood drained from the penis is then tested to determine whether Plaintiff has suffered permanent damage.  Plaintiff further testified:

> And if I had permanent damage, he would either have to operate on me [the third procedure] and cease all erections or I would have to continue to come back and forth to the ER and have him drain the erections because the erections would never stop without the operation. And if I keep coming back and forth to the ER to have it drained, the blood that's in my penis will eventually cause me blood poisoning because it don't fully come out, it stays clogged in there so I would die of blood poisoning, okay. And that is the three procedures.

(D.E. 33, p. 32).

While in the free world, a urologist in Victoria placed Plaintiff on a blood thinner. This medication was successful in preventing Plaintiff from having priapism erections when he was not in custody.  After Plaintiff was taken into custody at the Victoria County Jail in early 2020, Plaintiff began to suffer from symptoms of priapism erections.

Plaintiff immediately submitted requests to the jail's medical department to see a urologist.

Plaintiff's erection issues resolved themselves at first without having to see a urologist.   At some point in early 2020, Plaintiff's erection issues caused him to be taken to a local hospital's emergency room to receive an epidural shot.  Dr. McNiel from the Citizens Medical Hospital recommended that Plaintiff be seen by a urologist.  Plaintiff was sent to the emergency room on nine occasions between January and August of 2020 to receive an epidural shot.  (D.E. 33, p. 34).  The epidural shots, however, were not working as of August 2020, when he was released on a PR bond.  Plaintiff believes he was released on the PR bond because he continued to have his erection issues.

After Plaintiff was released on the PR bond, he suffered from a priapism erection which led him to visit the Citizens Medical Center.  Plaintiff was referred to a urologist in Houston.  The Houston urologist performed the pressure release procedure by sticking three syringes in Plaintiff's penis to drain the blood.  Plaintiff was informed that he had a follow-up appointment in two  weeks.  In the meantime, Plaintiff suffered from another priapism erection and was taken to DeTar Hospital.  Plaintiff was referred to a urologist in San Antonio.  Another pressure release procedure was performed.  Plaintiff described the procedure as "so painful."  (D.E. 33, p. 38).  The San Antonio urologist informed Plaintiff that he needed an operation.  Plaintiff refused the operation as there had been no medical diagnosis that his penis was damaged.

Plaintiff suffered from a third priapism erection while in the free world on the PR bond. Plaintiff was seen by an emergency room urologist at a Houston hospital.  Plaintiff

eventually had a third pressure release procedure. The Houston ER urologist advised Plaintiff to undergo an operation to permanently stop him from having any more erections and prevent him from dying of blood poisoning. The ER urologist informed Plaintiff that he was suffering from long-term erections because he had gone for too long without immediate urologist intervention while confined at the Victoria County Jail.

Plaintiff underwent an operation in Houston around October 2020. He awoke from the operation with a cast on his penis. Plaintiff was instructed to limit his movements and perform no heavy lifting. While getting on a bus to travel to a court hearing on his felony charges in Victoria County, Plaintiff's stitches burst. Plaintiff was taken to the emergency room and was unable to attend his court hearing.

The next week, Plaintiff attended court with respect to certain misdemeanor charges pending in Victoria County. Plaintiff was subsequently arrested on November 12, 2020 on a bond forfeiture and charged with two additional felony drug charges. While in custody, Plaintiff asked to have a urologist examine his wound from the surgery. Medical Provider Veronica allegedly refused wound care to Plaintiff and sent Plaintiff back to his cell.

Plaintiff's penis became infected. Officer Pena saw Plaintiff's infected penis and brought Plaintiff some gauze and antibiotics to clean the wound. Plaintiff's wound started to improve after four or five days. From November 2020 through February 2021, Plaintiff went back and forth to the jail's infirmary to see Medical Provider Veronica. Plaintiff was informed there was nothing wrong with his wound. However, according to

Plaintiff, his penis was deformed and the scar was not healing.  In addition, Plaintiff had blood in his urine.

In late December 2020, Plaintiff was placed in a suicide tank.  Plaintiff requested two blankets from Sergeant Wright due to having medical issues with his "priapism erections."  (D.E. 44, p. 20).  Plaintiff needed the blankets to help him avoid getting blood in his penis.  Plaintiff eventually went to sleep and woke up with an erection lasting five hours.  Plaintiff was taken to Citizens Medical Center the next day after being placed in the suicide tank.  Plaintiff received an epidermal shot which made the erection go away.  The doctor in the emergency room recommended that Plaintiff see a urologist for his serious erection issues.

In March 2021, Plaintiff was brought from the Victoria County Jail to the local hospital's ER to receive an epidural shot.  The doctor on duty told Plaintiff that he was going to have to inject himself in his penis with two syringes.  The doctor informed Plaintiff that only a urologist should administer such shots.  Plaintiff was suffering from an erection lasting eleven hours at that time.  Despite having an operation on his penis, the erections had returned.  Plaintiff administered the shots to himself. Plaintiff testified that his penis was the size of his wrist, that it hurt to urinate, and that the head of the penis was numb.

Throughout March 2021, Plaintiff suffered from erections lasting from nine to twelve hours.  Plaintiff alleges the medical staff at the jail did nothing for Plaintiff. While talking about his medical issues with medical providers Veronica and Robertson, Veronica admonished Plaintiff for denying the operation recommended by the San

Antonio doctor.  Plaintiff told Veronica that he underwent the operation soon thereafter in Houston after receiving a diagnosis that his penis was damaged.

At the end of March 2021, Plaintiff was seen by a urologist, Dr. New.  Because Plaintiff had blood in his urine, Dr. New placed Plaintiff on antibiotics. (D.E. 33, p. 49). Dr. New informed Plaintiff that he would "fix" him up.  He also requested Plaintiff's medical records from Houston to know the exact procedure that was performed on Plaintiff.  (D.E. 33, p. 50). Dr. New also recommended that he see both Plaintiff and his medical records in a week.  Plaintiff, however, was not brought back to see Dr. New.

Plaintiff subsequently was seen by a gastrologist with regard to stomach issues related to Plaintiff's dental issues discussed in detail below.  The gastrologist recommended that Plaintiff see a cancer specialist for his myeloid leukemia cancer.  She further recommended that Plaintiff see a urologist.  Contrary to the gastrologist's recommendation, Veronica told Plaintiff that there was no reason for him to see the gastrologist again.  Veronica also told Plaintiff that the urologist, Dr. New, did not want to treat Plaintiff and instead urged for Plaintiff to be sent back to the Houston urologist who performed the operation on his penis.

Plaintiff alleged that several urine tests have been performed on him. Following his visit with the urologist at the end of March 2021, Nurse Williams performed a urine test on Plaintiff and placed him on antibiotics.   Corporal Bates took a sample after Plaintiff threw up blood and placed the sample on the nurse's desk to test.  Nurse Gayle, however, informed Plaintiff that there no sample had been left on her desk.

Plaintiff was not seen by a urologist or other specialist in the weeks before the *Spears* hearing. Plaintiff testified that, if he does not see a urologist, he will have blood poisoning because he can already taste copper in his mouthy and his penis remains swollen. Plaintiff alleges officials at the jail refused to take Plaintiff to the emergency room in the last couple of months before the *Spears* hearing.

### C.    Allegations Regarding Plaintiff's Dental Issues

On December 18, 2020, Officer Flores brought Plaintiff a lunch tray while Plaintiff was in the dayroom. When Plaintiff ate some of the mashed potatoes, a piece of metal stuck in his tooth. Officer Flores noted that Plaintiff had a piece of wire stuck in his gums and teeth. (D.E. 33, p. 13). Plaintiff experienced pain when he touched the wire. Officer Flores grabbed the wire and pulled it. This action broke Plaintiff's tooth in half and damaged his gums.

Officer Flores took Plaintiff to the jail medical department as there was more wire in Plaintiff's mouth. After examining Plaintiff, Nurse Madison gave Plaintiff two aspirins and instructed Plaintiff to return to his cell. Plaintiff explained to Nurse Madison that he swallowed some of the metal wire and that his stomach was hurting. Nurse Madison informed Plaintiff that he would likely expel the metal after using the bathroom. Nurse Madison further informed Plaintiff that he would be on the dentist list and that she would recommend x-rays regarding the ingested metal.

Plaintiff returned to his cell. Officer Flores arrived two hours later and told Plaintiff to get dressed. He placed Plaintiff in detox. Officer Flores then strip searched

Plaintiff for contraband but did not find anything. Apparently, prison officials believed the wire in Plaintiff's mouth was some kind of contraband.

The next day, on December 19, 2020, Plaintiff was taken from his cell to face six officers. Plaintiff was stripped naked and a full body scan was performed. Plaintiff was x-rayed, which revealed wire stuck in Plaintiff's stomach. Plaintiff was handcuffed and taken to the Citizens Medical Center Hospital in Victoria. The emergency room doctor took x-rays of Plaintiff's stomach, revealing a piece of wire stuck in Plaintiff's lower intestines.

Plaintiff threw up blood in January and February of 2021. Plaintiff, however, had not seen a dentist. Plaintiff was taken to the Citizens Medical Center after the second time he threw up blood. The doctor told Plaintiff that he needed to see a gastrologist with regard to the metal stuck in his stomach. The doctor recommended that the Victoria County Jail send him to a gastrologist.

In March 2021, Plaintiff was seen by a gastrologist. She advised Plaintiff that he should undergo a stomach biopsy since he was bleeding from his stomach. She further sent Plaintiff back to the Victoria County Jail for lab work to be performed. The gastrologist indicated that she would see Plaintiff in a week. When Plaintiff returned to the Victoria County Jail, no blood work was performed. Plaintiff alleges the personnel at the medical department ignored Plaintiff's written requests to address his stomach issues.

On April 20, 2021, Plaintiff was seen by a dentist. The dentist pulled two pieces of metal from Plaintiff's tooth. (D.E. 33, p. 23). On April 28, 2021, the dentist pulled out Plaintiff's tooth. Plaintiff continues to endure pain with his gums.

### D.    Plaintiff's Claims

With respect to his claim against each named Defendant, Plaintiff alleges the following:

- **Sheriff Marr** – Plaintiff wrote him several letters explaining the inadequate medical care provided by his subordinates.  Sheriff Marr failed to take any action even though he had a duty to do so.

- **The Victoria County Jail, the Victoria County Sheriff's Department, and the Victoria County Jail Medical Department** – With respect to these entities, Plaintiff testified that Victoria County has a policy to deny inmates access to specialized medical providers due to the expenses incurred.  (D.E. 33, p. 59).

- **Dr. McNiel** – Dr. McNiel is emergency room doctor at the Citizens Medical Center.  He provided inadequate medical by failing to diagnose Plaintiff's penis as permanently damaged and recommending for Plaintiff to undergo an operation.  Plaintiff appears to claim that Dr. McNiel had some role in causing Plaintiff to be released on August 1, 2021.

- **Citizens Medical Hospital ER Employees** -Plaintiff did not provide any allegations regarding these unidentified individuals.

- **Medical Provider Veronica** – Veronica provided Plaintiff with inadequate care, placing Plaintiff's health at substantial risk by substituting herself in place of a urologist.  Plaintiff suggests that Veronica was responsible for not allowing Plaintiff to see a urologist.

- **Captain Williamson** – Captain Williamson failed to properly investigate and answer Plaintiff's grievances.  He also failed to ensure Plaintiff's health and wellbeing.   Captain Williamson also was aware of Plaintiff being released on a PR bond.

- **Officer Flores** – Plaintiff alleges that Officer Flores harmed him when he pulled the wire from Plaintiff's mouth which led to more dental problems.

- **RN Williams** – Plaintiff alleges that RN Williams played a role in providing Plaintiff with inadequate medical care for his dental and penis issues and in not permitting Plaintiff to see the appropriate medical professionals for his health issues.

- **Mona from the Victoria County Jail Kitchen Staff** - Plaintiff alleges that Mona is the kitchen staff's supervisor and is responsible for all food being prepared in a safe manner and for ensuring that all food trays are safe.

- **Nurse Katrina** – Plaintiff alleges that Nurse Katrina played a role in providing Plaintiff with inadequate medical care for his penis condition and in not permitting Plaintiff to see a urologist.

- **Nurse Delone** - Plaintiff alleges that Nurse Delone played a role in providing Plaintiff with inadequate medical care for his penis condition and in not permitting Plaintiff to see a urologist.

- **Nurse Gayle** - Plaintiff alleges that Nurse Gayle played a role in providing Plaintiff with inadequate medical care for his dental and penis issues and in not permitting Plaintiff to see the appropriate medical professionals for his health issues.

- **Chief Deputy Franklin** - Plaintiff alleges that Chief Deputy Franklin notified Plaintiff about being released on a PR bond. Plaintiff believes that this defendant had some role in Plaintiff's release on bond.

- **Mrs. Merez** – Plaintiff alleges that Mrs. Merez is a correctional officer at the Victoria County Jail who supervises the medical staff. Plaintiff believes that she was aware of Plaintiff's medical issues.

- **Nurse Madison** - Plaintiff alleges that Nurse Madison played a role in providing Plaintiff with inadequate medical care for his penis and dental issues and in not permitting Plaintiff to see appropriate medical professionals.

- **Dr. Robertson** - Plaintiff alleges that Dr. Robertson provided Plaintiff with inadequate medical care for his penis issues and refused to permit Plaintiff to see a urologist.

- **Nurse Black** - Plaintiff alleges that Nurse Black played a role in providing Plaintiff with inadequate medical care for his penis issues and in not permitting Plaintiff to see a urologist.

## IV.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).   A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d

322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

## V.    DISCUSSION

### A.    Injunctive Relief

At the *Spears* hearing, the undersigned indicated that Plaintiff "may be asking for [] injunctive relief" with respect to his deliberate indifference claims.  (D.E. 33, p. 58). Plaintiff's transfer from the Victoria County Jail into TDCJ custody and placement at the Cotulla Unit renders moot any such claims seeking injunctive relief in this case.  *See Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)); *Sias v. Jacobs*, No. 6:17cv413, 2017 WL 8229544, at \*4 (E.D. Tex. Dec. 11, 2017); *King v. TDCJ*, No 3:15-CV-1365, 2016 WL 8671926, at \*2 (N.D. Tex. Jan. 8, 2016). Because Plaintiff has been transferred from the Victoria County Jail, the undersigned respectfully recommends that his claims for injunctive relief against Defendants be dismissed with prejudice.

### B.    Private Parties

In certain circumstances, a private party may be acting "under color of state law" and held liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).  A private party may be deemed a state actor under "three circumstances, (1) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are 'traditionally the exclusive prerogative of the state,' or (3) where the state has exercised coercive power or has provided significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that

of the state." *Rodgers v. City of Lancaster Police*, No. 3:13-CV-2031, 2017 WL 457084, at *13 (N.D. Tex. Jan. 6, 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1981)).

Plaintiff sues Dr. McNiel, a private doctor working at  the Citizens Medical Hospital.  He has not alleged any specific facts to support a finding that Dr. McNiel acted under color of law, conspired with a state actor, or exercised powers that were traditionally the exclusive prerogative of the state.  Rather, Plaintiff's allegations pertain primarily with Dr. McNiel's individual actions in providing medical care. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Dr. McNiel be dismissed with prejudice for failure to state a claim for relief.

Plaintiff further sues defendants identified as "Citizens Memorial (sic) Hospital ER Employees."  Plaintiff alleges no specific facts in support of his claims against these unidentified individuals, much less any facts to suggest that they were state actors. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the Citizens Medical Hospital ER Employees be dismissed with prejudice for failure to state a claim for relief.

## C. The Victoria County Jail, the Victoria County Sheriff's Department, and the Victoria County Jail Medical Department

Plaintiff names as defendants the Victoria County Jail, the Victoria County Sheriff's Department, and the Victoria County Jail Medical Department. These entities, however, are not capable of being sued.  *Rogers v. Nueces County Jail*, No. C-07-410, 2007 WL 4367814, at *4 (S.D. Tex. Dec. 13, 2007) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991)). Accordingly, to the extent Plaintiff seeks to sue the

Victoria County Jail, the Victoria County Sheriff's Department, and the Victoria County Jail Medical Department, the undersigned recommends that his claims against these entities be dismissed with prejudice for failure to state a claim for relief.

### D.   Official Capacity Claims

Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted). Thus, to the extent Plaintiff seeks to sue the remaining individual defendants from the Victoria County Jail in their official capacities, it is effectively a suit against the officials' office, Victoria County. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

A municipality such as Victoria County is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). *See also Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 166 (5th Cir. 2010) (noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation). Liability of a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

As discussed below, Plaintiff has sufficiently stated claims of deliberate indifference to his serious medical needs with respect to the failure of medical officials to treat Plaintiff's serious medical conditions and refer Plaintiff to certain specialized doctors. Plaintiff testified at the *Spears* hearing that Victoria County has a policy to deny inmates access to specialized medical providers due to the expenses incurred. (D.E. 33, p. 59). Plaintiff's allegations are sufficient to state a claim against Victoria County as Plaintiff's alleged constitutional violations may have resulted from the implementation of such a policy.

Accordingly, it is respectfully recommended that Plaintiff's claims against the remaining individual defendants in their official capacities be dismissed with prejudice and that Plaintiff's claim against Victoria County based on the alleged policy in effect be retained.

### E.  Deliberate Indifference to Serious Medical Needs

Plaintiff claims that prison officials at the Victoria County Jail acted with deliberate indifference to his serious medical needs related to his penis and dental issues. Plaintiff's allegations indicate that, during all relevant times, he was confined at the Victoria County Jail as either a pretrial detainee or a convicted inmate.

Pretrial detainees have a constitutional right under the Due Process Clause to protection from harm during their confinement. *See Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). The duty to protect pretrial detainees from harm under the Due Process Clause is the same as the one afforded to convicted prisoners under the Eighth Amendment. *See*

*Hare*, 74 F.3d at 650 ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including protection from harm, during their confinement."). Thus, regardless of Plaintiff's status as either a pretrial detainee or convicted inmate, his deliberate indifference claims will be analyzed under the same principles. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (recognizing that there is "no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care").

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) *Farmer*, 511 U.S. at 834. In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the  [inmate's] health or safety could be drawn; and (2)

20 / 29

that the defendant actually drew the inference that such potential for harm existed."
*Trevino*, 2017 WL 1013089, at \*3 (citing *Farmer*, 511 U.S. at 397 and *Harris v.*
*Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials
refused to treat him, ignored his complaints, intentionally treated him incorrectly, or
engaged in any similar conduct that would clearly evince a wanton disregard for any
serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal
quotation marks and citation omitted).  Deliberate indifference may be exhibited by
prison doctors in their response to prisoners' needs, but it may also be shown when prison
officials have denied an inmate prescribed treatment or have denied him access to
medical personnel capable of evaluating the need for treatment. *Estelle*, 429 U.S. at 104-
05.  A "delay in medical care can only constitute an Eighth Amendment violation if there
has been deliberate indifference [that] *results in substantial harm.*" *Easter v. Powell*, 467
F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

The deliberate indifference standard "is an extremely high standard to meet."
*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not
constitute deliberate indifference, nor does a prisoner's disagreement with his medical
treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.  Deliberate
indifference is more than mere negligence. *Farmer*, 511 U.S. at 835.  "Even proof of
gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-

CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).

### *(1)     Sheriff Marr, Mrs. Merez, and Mona*

Plaintiff alleges that he wrote several letters to Sheriff Marr to explain the failure of his subordinates to address his medical issues but that Sheriff Marr failed to take any action to help Plaintiff with his medical issues.  Plaintiff further alleges that Mrs. Merez, a correctional officer acting as the supervisor of the jail's medical staff, was aware of Plaintiff's medical issues but also failed to take any corrective action.  Lastly, Plaintiff alleges that Mona, as the kitchen staff's supervisor, should be held responsible for the metal wire in his food because she is required to ensure that all food be prepared and served in a safe manner.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Thus, a supervisor who is not personally involved is liable only if he has implemented "a policy so deficient that the policy itself is a repudiation of the

constitutional rights and is the moving force of the constitutional violation." *Thompkins*,
828 F.2d at 304.). "Mere knowledge and acquiescence on a supervisor's part is
insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985,
2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff attempts to sue Sheriff Marr, Mrs. Merez, and Mona in their supervisory
capacities. He alleges nothing in his Amended Complaint or testimony at the *Spears*
hearing to suggest that they had any personal involvement with regard to causing and/or
treating Plaintiff's medical conditions. Plaintiff further alleges nothing to indicate that
these defendants engaged in any behavior to create supervisory liability. The
undersigned respectfully recommends, therefore, that Plaintiff's deliberate indifference
claims against Defendants Marr, Merez, and Mona in their supervisory capacities be
dismissed with prejudice for failure to state a claim.

### (2)    *Captain Williamson*

Plaintiff's deliberate indifference claims against Captain Williamson center solely
on his conduct in failing to properly investigate and answer Plaintiff's grievances.
Plaintiff's dissatisfaction with Captain Williamson's conduct, however, fails to state a
cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union,
Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of
grievance procedures by prisons but noting that such procedures are not constitutionally
required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a
federally protected liberty interest in having grievances investigated, let alone resolved in
their favor); *Mahogany v. Miller,* 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the

plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against Captain Williamson in his individual capacity be dismissed with prejudice for failure to state a claim for relief.

### (3)    *Deliberate Indifference (Penis Condition)*

Plaintiff alleges that he was diagnosed with a rare cancer in 2006 which caused him to suffer priapism (long-term) erections. Plaintiff's allegations reflect that this condition is serious and that the medical staff at the Victoria County Jail failed to provide him with proper medical care for this condition during his long-term stay at the Victoria County Jail. Plaintiff identifies the following defendants as having failed to provide him adequate medical attention: (1) Medical Provider Veronica; (2) RN Williams; (3) Nurse Katrina; (4) Nurse Delone; (5) Nurse Gayle; (6) Nurse Madision; (7) Dr. Robertson; and (8) Nurse Black. Plaintiff primarily complains that these defendants failed to allow him to see a urologist, a medical expert specializing in the treatment of priapism erections through various procedures designed to prevent permanent damage.

Plaintiff's allegations, as set forth above, detail his long-term battle with having priaprism erections while confined at the Victoria County Jail and the damage caused to his health during this time. While his allegations indicate that he was taken to the emergency room on several days where he received epidural shots for his long-term erections, Plaintiff states that he was only permitted to see the urologist only on one

occasion. According to Plaintiff, only a urologist had the necessary expertise to assess and treat Plaintiff's condition.

Plaintiff's allegations, accepted as true, state deliberate indifference claims with regard to the medical care provided to him by the Victoria County Jail medical staff for his priapism erections. Further factual development of these claims will clarify the roles of each medical staff member named as a defendant. The undersigned recommends, therefore, that Plaintiff's deliberate indifference claims on these claims be retained against Defendants Veronica, Williams, Katrina, Delone, Gayle, Madison, Robertson, and Black.

### (4)    *Deliberate Indifference (Dental Condition*)

#### Officer Flores

Plaintiff alleges that, on December 18, 2020, he ate mashed potatoes which contained a metal wire, that a piece of wire stuck in his gums and teeth, that the wire caused him pain, that Officer Flores grabbed the wire and pulled it, that Officer Flores's act broke Plaintiff's tooth in half and damaged his gums, and that Officer Flores immediately took Plaintiff to medical because additional wire remained in Plaintiff's mouth.

Plaintiff's allegations, accepted as true, reflect that Officer Flores attempted to help Plaintiff by trying to remove the metal wire from Plaintiff's mouth. At best, Plaintiff's allegations indicate that Officer Flores acted with negligence in rendering assistance but not with the requisite deliberate indifference to cause Plaintiff substantial harm. Indeed, Officer Flores brought Plaintiff to the medical department immediately

after his attempt to remove the wire.    Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against Officer Flores be dismissed for failure to state a claim.

### Williams, Madison, and Gayle

Plaintiff alleges that: (1) on December 18, 2020, Plaintiff suffered injuries to his teeth and gums when he took a bite of his mashed potatoes which contained metal wire; (2) Plaintiff had metal wire stuck between his gums and teeth; (3) Plaintiff's tooth and gums were damaged when Officer Flores attempted to remove the wire; (4) Nurse Madison treated Plaintiff by providing him with two aspirins, informing Plaintiff he would be on a list to see the dentist, and recommending x-rays be taken; (5) x-rays were taken of Plaintiff's stomach on December 19, 2020, revealing wire stuck in Plaintiff's intestines; (6) Plaintiff was not taken to a dentist either at that time or in early 2021 when he threw up blood; (7) Plaintiff was finally seen by a dentist on April 20, 2021, where two pieces of metal were removed and Plaintiff's tooth was pulled; and (8) Plaintiff continues to endure gum pain.

Plaintiff alleges that RN Williams, Nurse Gayle, and Nurse Madison were responsible for not referring him to a dentist until four months after the incident occurred on December 19, 2020.    Plaintiff's allegations, accepted as true, state deliberate indifference claims with regard to the medical care provided to him by these defendants for his dental issues.  Further factual development of these claims will clarify the roles of RN Williams, Nurse Gayle, and Nurse Madison in connection with Plaintiff's dental care.

The undersigned recommends, therefore, that Plaintiff's deliberate indifference claims on these claims be retained against Defendants Williams, Gayle, and Madison.

**F.     PR Bond**

Plaintiff alleges that: (1) sometime in August 2020, he was released on a PR bond; (2) Captain Williamson was aware that he was released on the PR Bond; and (3) Chief Deputy Franklin had some unspecified role in releasing Plaintiff on the PR bond. Plaintiff believes he was released on the PR bond due to complications surrounding the treatment of his penis condition.

Plaintiff has failed to state a constitutional claim against Defendants Williamson and Franklin with respect to his release on a PR bond.  Plaintiff's release placed him in a better position to obtain the necessary medical care for his condition.  Accordingly, the undersigned respectfully recommends that Plaintiff's claim based on his PR bond release against Defendants Williamson and Franklin be dismissed with prejudice for failure to state a claim for relief.

**VI.     RECOMMENDATION**

For the reasons discussed above and for purposes of §§ 1915A and 1915(e)(2), Plaintiff has stated sufficient facts that, if true, state: (1) deliberate indifference claims based on inadequate treatment for his penis condition against **Veronica, RN Williams, Nurse Katrina, Nurse Delone, Nurse Gayle, Nurse Madison, Dr. Robertson, and Nurse Black** in their individual capacities; (2) deliberate indifference claims based on inadequate treatment for his dental condition against **RN Williams, Nurse Gayle, and Nurse Madison** in their individual capacities; and (3) deliberate indifference claims

against **Victoria County** (as substitute Defendant for the individual defendants from the Victoria County Jail in their official capacities) based on an alleged policy to deny inmates access to specialized medical providers.   Accordingly, it is respectfully recommended that these claims be **RETAINED.**  The undersigned will order service as to these defendants by separate order.

For the foregoing reasons, the undersigned further recommends that: (1) Plaintiff's claims for injunctive relief against all **Defendants** be dismissed with prejudice; and (2) Plaintiff's claims against all individual **Defendants** from the Victoria County Jail in their official capacities be **DISMISSED with prejudice**; (3) Plaintiff's remaining claims against all remaining Defendants be **DISMISSED with prejudice** for failure to state a claim pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 15th day of September, 2021.

Jason B. Libby
United States Magistrate Judge

## NOTICE  TO  PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).